and we hear first from Mr. Hinojosa. May it please the court. Good morning. This case is about the Constitution. This case is about the powers given under the Constitution to the federal government and to the states. The way that I see this citizenship issue in our case is who has the power to decide the fact of where an individual is born within the geographical limits of any given state. Our constitutional system is one that gives the federal government limited powers. And the states have many more powers. And under the Tenth Amendment, I propose that the state of Texas or any other state has the power to determine who is born within their borders. Now, this doesn't mean that the state of Texas has authority over immigration law. This means that the state of Texas has the authority to decide the fact of where an individual within its limits is born. The Constitution says in the Fourteenth Amendment that if an individual, any person born in the United States and subject to the jurisdiction thereof is a citizen of the United States and of the state wherein they reside, that is the Constitution. And that constitutional definition of what citizenship is places an additional limit both on the states and on the federal government to define definition by birth. You've got two of our cases that seem to cut against you. That's the Garcia v. Carey case. You need to discuss those. Yes, Your Honor. Thank you very much for asking me about those cases. And yes, you are correct. Those cases seem to cut against me. I would argue, though, that the Bustamante Herrera case does not necessarily cut against me. Because in Bustamante Herrera, what we had was an individual who was not born in the United States. We had an individual who was a citizen by birth through the power of Article I, Section 8, where Congress had defined derivative citizenship. So that case was a little bit different from our case. And what happened there was that the individual went to state court and basically, having failed one of the elements to establish derivative citizenship, basically asked the state judge to make a retroactive decision and grant his mother custody, full custody, as opposed to joint custody of him. And the purpose of this was to affect immigration policy. And so that case is a little bit different. In that case, the court made clear that that was a derivative citizenship issue. Now, in Garcia, we carry—But in that case, the point was whether federal court, you know, for citizenship purposes, they were bound by California's determination of that legal relationship between him and his mother. And the court said it was not because this was a matter of citizenship and who was entitled to citizenship. I mean, that seemed to be pretty close to our case. It may be a pretty close case, but basically, the federal government, under Article I, Section 8, has the power to enact naturalization laws, uniform naturalization laws. Now, the federal government doesn't have the power to define citizenship by birth. And in this case, the state judgment was not saying that Mr. Bustamante had been born in the state of California. What they were saying is, even though Bustamante was born in a different country—I believe it was Mexico— even though he was born in a different country, we're going to go back and we're going to change our judgment, our original judgment, so that we can help you out, basically, to effectuate your immigration purposes. This, the state may not do, and obviously the state may not do this, because that is a power that has been specifically given and granted to the federal government. But it had nothing to do with the question of where the person had been born. Now, Garcia Vicari, on the other hand, did have everything to do with where the person was born. Arguably, Garcia had been born in Texas. And arguably, similar to our case, Garcia had been issued a birth certificate from the state of Texas. And if I am not mistaken, they had also had a hearing in the state of Texas that determined that the birth certificate of Mr. Garcia was a valid birth certificate, just like in our case. Unlike our case, in that situation, Mr. Garcia went farther and he went to Mexico and he had a declaration in a Mexican court that his birth was not valid in Mexico, that the birth certificate in Mexico was not a valid one. Now, the Garcia court used the case of Bustamante to support his position, or to support his argument, that even if the state of Texas decides that the individual is born in Texas, that that is not controlling as to the question of citizenship upon the federal government. But that's exactly what the 14th Amendment says, that if a person is born within the state of Texas, he's a United States citizen. So that's why I believe that Garcia Vicari was decided wrongfully. Now, I believe that Garcia Vicari was decided wrongfully, and it used Bustamante to support its reasoning, but Bustamante doesn't have, or doesn't deal with that. It doesn't really lend support to the decision in that panel. That decision was an unpublished decision. Bustamante was a published decision. And so, I think that we can follow Bustamante without necessarily conflicting with the theory that I am proposing. And basically, I don't find anything in the Constitution that says that the federal government has the power to define who is born in Texas. The district court, based on basing itself on Bustamante at the time, basically said that even if Sanchez had been born in Texas, it's still up to the federal government to decide citizenship. Now, that statement is plainly wrong, because it contradicts the 14th Amendment. Some Supreme Court cases, Kim Wong, for example, has stated that the 14th Amendment basically changed the character of Article I, Section 8. And basically, what the Court said was, or what I understand from that case, is that when the 14th Amendment came about, it was only to make sure that no future Congress could, by ordinary act, change the definition of what it meant to be, or what it was, a United States citizen. And basically, there were a couple of requirements. The person could either be born or naturalized. And if the person was born, it had to be born subject to the jurisdiction of the United States, to be a United States citizen. Now, basically the understanding of that under the common law, and it's still the understanding today, is that if an individual is born, even if he's born in the state of Texas, but if his father or mother happened to be here on official business from the government of Mexico, let's say the ambassador, well, that individual was not subject to the jurisdiction of the United States. Or if it was in a territory that was occupied by, you know, in cases of an invasion by the invading army and not subject to the jurisdiction of the United States. So those issues or those exceptions are not, of course, relevant here. But the idea that the federal government cannot destroy citizenship as it is defined in the 14th Amendment is also supported by cases like the Froyum, which overruled an earlier case, and it took them 10 years to overrule that case. So, to me, my understanding of these cases, or what these cases stand for, is the proposition that the fact of birth is clearly within the 10th Amendment power granted to the states. And in this case, the state of Texas, in exercise of its power, according to the rules that it established, the administrative rules, had a hearing in which it decided that and basically what they did in that hearing was they compared the Mexican birth certificate with the Texas birth certificate because the Immigration and Naturalization Services sent the appropriate department the birth certificate, told them, hey, Mr. David Sanchez's birth may be fraudulent. And so they put an addendum to his birth certificate. Mr. Sanchez was not able to get a certified birth certificate. He challenged that decision, and in the state hearing, he won. So the state determined a fact. That fact was not a fact that the district court was at liberty to relegate all over again. What's your best case of that, the fact that this kind of decision by the state would preclude a finding under 1503 that he's not a resident, that he was not born in the U.S.? Well, I would base it on Article 4 of the Constitution. And that's why we have a combination of the 14th Amendment, the 10th Amendment, and Article 4 combined. And then, of course, we argue that Article 1, Section 8 doesn't apply. There's a case in St. Remo Hotel, which basically states that article, shortly after the Constitution had been created, Congress enacted the federal statutes regulating what the full faith and credit clause, the federal full faith and credit clause. And what it said is that what is inspired by Article 4 of the Constitution. Also, in Tennessee, in the case that we cited, University of Tennessee versus Elliott, in that case, the court basically explains that even if the, or even if Article 4 was not applicable to the common law principles, that there was no reason to not apply the spirit of Article 4. Because basically, the idea is to avoid what is decided in one forum to again be relitigated in a separate forum, be it federal or be it state. And those I think are my best cases for that proposition. I don't believe either of the briefs pointed this out. If they did, I missed it. The city of Matamoros, Mexico, is that directly across the Rio Grande from Brownsville? Yes, Your Honor, it is, yes. Just separated by a bridge. Yes, that is correct, yes. I'll take judicial notice of that. I don't believe either side has pointed that out, but that's true. That is true, and Matamoros is where the government says your client was born, and Brownsville is where you say he was born. That is correct. And they are basically almost twin cities, you know, just separated by a bridge. I do believe that the government correctly pointed out that at one point we had gone to a deposition in Brownsville, and they pointed out that I was within a couple of minutes from actually going to the registry in Matamoros. And the only thing I would like to say about that specific situation is that I, as counsel for Mr. David Sanchez, even though I was born in Mexico, I am afraid to go to Mexico, and I try not to go to Mexico as much as I can. So I didn't, even though I was about five or ten minutes away from there, I didn't actually cross over the bridge to go and check out where the birth certificates in Matamoros are kept at that time. So to conclude, basically we believe that it is clear that if the state of Texas in fact decides the fact of birth, then it is also clear that the federal district court doesn't have authority to re-litigate that specific issue, or that specific fact. And then it is clear, because even the Bustamante court admits that Article 14 citizenship by birth is granted by that constitutional statute, and it's actually a limit both on state and on the federal government. And so under our theory, the balance of powers would be appropriate if that constitutional theory is preserved. Okay. Thank you, Your Honor. Thank you, sir. Shall I begin, Your Honors? I have a procedural question for you, Mr. Goldman. Yes, Your Honor. I understand you were counsel in the actual district court proceeding. That is correct, Your Honor. At the conclusion of the proceeding on June the 18th, 2014, the district judge made oral findings and facts and conclusions of law, but then at the end of the proceeding instructed the parties to draw up an order and a judgment. And on the date of the judgment, the district judge also filed written findings of fact and conclusions of law. Were those prepared by you? Your Honor, I prepared a draft for the court. That is actually in the record. And then afterwards, the judge did prepare one. It is close. They are very similar, but they are not the same. The judge did make changes to the proposed findings of fact and conclusions of law we sent to the court. But they are very similar. We will not deny that, Your Honor. Your Honors, shall I continue? If it may please the court, my name is Adam Goldman, and I represent the federal defendants in this case. Your Honors, we ask the court to affirm the holdings of the district court in this case, which, after a five-day trial with numerous witnesses and numerous exhibits, concluded in accordance with 8 U.S.C. 1503A that the plaintiff is not a United States citizen. I would like to first address one case that the counsel brought up that goes directly to the full faith and credit both clause and act, and that is University of Tennessee. We would submit, Your Honor, that counsel is misreading the case. In University of Tennessee, Your Honors, in that case, the Supreme Court both stated that the full faith and credit clause and full faith and credit act did not apply. It then referred to the common law rules of preclusion and stated that they would apply if three requisites were met, that the same parties were present, that the parties had an adequate opportunity to litigate the same issue, and that the effect of the administrative decision were the same. University of Tennessee was an employment discrimination case in which the same parties were present and they argued the same issues before an administrative judge. By way of contrast, Your Honor, in this case, the same parties were not present before the state administrative judge. It was the state of Texas party and the plaintiff, not any federal government agency or representative. The issue was totally different. The issue there was whether or not the addendum should be removed. And the reason that is relevant, Your Honor, is that once the addendum is removed, under Texas Health and Safety Code Section 191 and 192, that document is then allowed to be introduced into court as prima facie evidence, not conclusive evidence, of a claim of birth in Texas. University of Tennessee was just an ordinary civil case. It had nothing to do with immigration matters. That is correct, Your Honor. It was an employment discrimination case. I mean, I thought your basic argument was that the federal government was supreme in the matters of citizenship, who is entitled to admission to the U.S. and who is entitled to citizenship, irrespective of what a state might decide. That is correct, Your Honor. And this goes actually to the fact of citizenship. Counsel has been trying to make a difference between whether or not someone was born here versus whether or not they derived citizenship and cited the Bustamante Brera decision. We know, Your Honor, the issue is actually the alleged citizenship by birth and alleged citizenship through derivation. The issue is whether or not the individual automatically acquires citizenship. So in both cases, if there's alleged birth, they would automatically acquire citizenship at birth, or in Bustamante Brera, they would automatically acquire it when the mother became a citizen. So the issue is actually the same, and therefore we would submit the holding of Bustamante Brera controls in this case. In addition to that, as well as Garcia, which we submit also as a case, although it's not a published case, we would submit it should control, we would note that there was a case in the 1950s called Mottoy out of the Ninth Circuit that was adopted by this Court in the 1950s and a case called De Vargas and Brownell, two different times. That case, I would submit, had identical facts to Garcia and this case, namely, in that case, a San Francisco registrar made a finding that the individual there was born in San Francisco. The Ninth Circuit then stated, despite what that registrar stated, that is entitled to no binding effect. So we would submit that case as well is controlling. We would also note that in addition to the immigration basis as to why the Supremacy Clause controls in the U.S.'s jurisdiction is also the passport issue, which was discussed most recently by the Supreme Court in Zivotofsky, a recent case that dealt with the place of birth being Jerusalem and whether or not the government could put down as the place of birth. And the interesting thing about that case, Your Honors, is that not only did the Supreme Court say the Federal Government has control over the place of birth on the passport, but they actually said the executive branch itself even trumps Congress in that. In fact, they said the place of birth is an executive decision. So they actually went further than even we than even the issue in this case, Your Honors. We would also note that there would be we would submit dire consequences for 1503 litigants if the case, namely if someone went through this administrative law judicial proceeding in the State and lost, if that case that decision by that ALJ were to be conclusive, then that individual could never file a 1503 application if they were denied a passport. They would be out of luck if this controlling ALJ decision were to carry the day. We would also note there are factual problems that we noted in the brief with the ALJ decision, Your Honors. I think the most obvious one is getting the age wrong. As we noted and as the mother of the plaintiff conceded, she was in fact 20 years old at the time that birth certificate was issued. And we would submit that it should not be conclusive on this Court to find that 87 minus 67 equals 21. We would submit that wasn't right for the ALJ and it should not be conclusive on this Court or a district court. And there were also obvious other problems that we mentioned in the brief. Regarding the 14th Amendment, all that states is, and this was not, despite what counsel stated, this was not disputed by the Court in this case. It just states that if someone is born and this is actually under 1401A of Title VIII, and we believe under constitutional avoidance, 1401A should be governing in this case, so this Court does not have to decide the constitutional issue. All it states is that if a person is born in the jurisdiction, then they are a citizen. The judge in fact stated that in her findings of fact and conclusions of law in this case. So what happens in this case is that she noted and it was never disputed that if there was a finding that the person was in fact born in Texas, that person would be a U.S. citizen. Of course, we would submit the evidence here was overwhelming that the person was not born in the U.S. If there are no further questions on the first point, Your Honors, I'd like to move to the second point. The second point, Your Honor, deals with, I'll just be very quick, as to whether or not the 2201 cause of action and the 1503A were properly dismissed. We submit they were properly dismissed. 2201 was properly dismissed because it is included directly in the language of 1503A. So we would submit there was no reason to have a separate cause of action for that. As for the Ulrich Act, Your Honors, we would submit it was not applicable. There was no absolute necessity for it. There was no extraordinary circumstance that existed in this case. And as the Court properly noted, it does not create jurisdiction. It only aids in jurisdiction. And here, there was no need for such an aid. Moving to the next point, Your Honors, regarding the mother's place of birth, we would submit it was properly considered by the Court. First and foremost, it went to her credibility. Her place of birth was an issue of credibility throughout this case. And she stated under oath several times she was born in Texas. However, during the trial, her credibility was shown to be questionable because her own mother, her own father, and her twin sister all testified she was born in Mexico. And indeed, we thought it was noteworthy that her twin sister testified and her twin sister, for lack of a better term, became a citizen the right way. She legally got a green card and then legally naturalized and her twin sister, the mother, made a claim that she was born in Texas. We also noted it was also important to credibility because the birth certificate at issue that the counsel is referring to, the mother stated in that she was born in Mexico, yet she also has a birth certificate stating she was born in Texas. So we would submit that because of this issue, the mother's place of birth was also relevant. And although at the end of the day counsel did state that he was not going to raise a derivative citizenship issue, it was still included in the exhibits, namely Plaintiff Exhibit 4, a claim of derivative citizenship. Finally, regarding the new trial motion, Your Honor, we would submit that it was properly denied. There were three documents at issue in the motion for a new trial. An expert report that was prepared four weeks after the trial, which we submit by definition is not new evidence. And then the other two documents were the birth record immediately before and immediately after the plaintiff's birth record. And we would note that the plaintiff's counsel on page 2245 of the record specifically stated he objected to their introduction and that objection was sustained. The expert report we would submit is not related to those issues because it only contained one sentence in 15 pages regarding those documents. And finally, we would submit that there was a lack of diligence. The counsel knew about the Mexican birth record and we would submit it as axiomatic. He would know there would be a birth record before that and after that. So would the plaintiff, and therefore it was a lack of diligence to submit it. Finally, regarding the findings of fact, Your Honor, although that was not an issue briefed in this case, we would submit that the Court's actions were proper. As I stated, what happened was we drafted a proposed findings of fact and conclusions of law. We did submit it to the Court and although it was very similar, they were not adopted in whole. Is it your position that the written findings and conclusions control over the oral findings and conclusions at the end of the hearing? We would submit, Your Honor, that that issue does not have to be decided by this Court because they are substantially the same. The oral and the written? Yes, Your Honor. I suppose at the end of the day the final one that is signed by the judge would have to be I realize I'm sort of being put in a having to pick one or the other. If there was some sort of conflict, I believe since the last thing before final judgment were the written decision, that would be the controlling decision of the Court because final judgment was entered right in accordance with that on a separate document pursuant to the Federal Rules of Civil Procedure. But we would submit, Your Honor, that since they are the same findings, although the language obviously wasn't the same because Judge Rosenthal was doing it orally and did not have the time to articulate it as clearly as she would in writing, that there is no sort of issue regarding any sort of dispute between the two findings by the Court. And if there are no other questions, Your Honor, the government would rest on its brief and ask that you affirm the district court's decision. Thank you, Mr. Gold. Thank you. Okay, Mr. Hinojosa, back to you. Thank you, Your Honor. First, I would like to state that I also believe that Guzman-Terrera is controlling in this case. I just believe that it's controlling in a different way and it doesn't deal with the issue of a person that is born in the United States. And in the case of a derivative citizenship or citizenship obtained through naturalization, Article I, Section 8 gives the federal government the power to define the conditions upon which an individual can obtain a citizenship through naturalization. It will include derivative citizenship. It even includes a birth abroad to U.S. citizenships. A child born abroad to a U.S. citizen parent is a United States citizen, according to an act of Congress. But I submit that the definition of the 14th Amendment of what is a citizen by birth is binding, is the final authority on who is a United States citizen by birth. Under Article I, Section 8, or any other enumerated power given to the federal government, the Department of Justice or the Department of State or Congress itself doesn't have the power to delegate powers that they don't originally have. Justice Marshall and Marbury v. Madison stated, basically, that we are a nation of, we have a federal government of limited powers, and so that those limited powers cannot be erased or confused, a constitution was written. And so, in my point of view, that is controlling in this case. Article I, Section 8 does not rule. The 14th Amendment and the 10th Amendment, which gives the states the power to decide who is born within their jurisdiction, is what governs and controls. With respect to the decision, the finding of fact by the district court that my client's mother was not a United States citizen, well, the only thing I would submit in that regard is that my client's mother was not at trial. My client's mother did not have the ability to respond to that. I was not representing her. Do you raise as an issue the derivative citizenship? It's confusing whether you withdrew that claim during trial or whether you're pursuing it here. Are you still... No. Derivative citizenship was never an issue. As a matter of fact... So that's not a claim in this case. No, it's not a claim in this case and should have not been touched by the district court. I was not representing the mother. The mother did not have counsel and she did not have an adequate opportunity to be heard on that issue. So she made a finding, the district court just made a finding that my client's mother was not a United States citizen and that was not part of the case. It was not a case in controversy. It was not something that she had the power to decide. Just like I also believe that the district court did not have the power to decide a fact that had already been found by the administrative body of the state of Texas. In other contexts, in the immigration context, we have what is called the Chevron Doctrine. And basically the Chevron Doctrine does the same thing, that an administrative body, being the Board of Immigration Appeals or any other body, has an area of specialized knowledge. And normally the court will refer to the decisions from those administrative bodies, unless they are violative of their own rules, or violative of the Constitution in some other respect, or that whatever statute they are interpreting is clearly inconsistent with what Congress has written. So, even in those cases, even in the area of immigration, it is not unheard of that administrative bodies will be given deference. And thank you very much. Are you conceding that you are not making a claim under the Administrative Procedure Act for mandamus relief, or are those still issues? No, I believe I conceded that. The ones that I did not concede were the other ones, the arguments that we were making. So no APA or mandamus claim? Yes, Your Honor. Okay. Thank you, Mr. Hinojosa. We have your argument. Thank you very much. Thank you, gentlemen. We have your case.